Manuela SANTIAGO COLLAZO, et al., Plaintiffs,

v.

Pedro FRANQUI ACOSTA, et al., Defendants.

Civ. No. 89–363 (JP).

United States District Court, D. Puerto Rico.

Aug. 28, 1989.

Francisco R. González, Hernández Sánchez Law Firm, Santurce, P.R., for plaintiffs.

José R. García Pérez, Federal Litigation Div., Dept. of Justice, San Juan, P.R., Rafael E. García Rodón, García Rodón, Correa Márquez & Valderas, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

Plaintiffs, the Municipality of Vieques, Puerto Rico, and its mayor (in both her personal and official capacities) brought this action against various officials of the Commonwealth of Puerto Rico alleging basically that:

It has been the policy of the Municipal Services Administration and its Administrator and Director of Federal Programs to give preference in assignment of funds [under the Housing and Community Development Act of 1974, as amended, 42 U.S.C. §§ 5301–5320] to members of the Popular Democratic Party and to discriminate against members of other political parties in violation of Plaintiffs Constitutional rights, laws and regulations. Plaintiff Manuela Santiago Collazo is a member of the New Progressive Party of Puerto Rico, and the Municipality of Vieques is administered by members of the New Progressive Party who won in the 1984 and 1988 municipal elections.

Complaint, paragraph 5.

Plaintiffs base their action on 42 U.S.C. §§ 1981 and 1983, the Housing and Community Development Act of 1974, as amended, 42 U.S.C. §§ 5301–5320 (the HCDA), and the first, fifth, and fourteenth amendments to the U.S. Constitution. They also allege pendent claims arising under the laws of Puerto Rico.

Defendants have filed a motion to dismiss on several grounds. They first summarily contend that § 1981 only applies to racial discrimination, that this Court lacks jurisdiction to entertain the pendent claims, and that the complaint fails to allege any sort of claim against Puerto Rico's Secretary of Justice.

Defendants further contend that the HCDA does not grant plaintiffs a private cause of action enforceable under § 1983, that plaintiff lacks standing in her individual capacity, and that the Municipality of Vieques is not a "person" entitled to sue under § 1983.

Subsequent to the filing of the motion to dismiss, two motions to intervene as plain-

tiffs were filed (by the same attorneys who represent plaintiffs) on behalf of two low-income residents of Vieques who are "in great need of housing and or economic development" and on behalf of Mayor Santiago in her capacity as President of the New Progressive Party in the Municipality of Vieques. These were also opposed by defendants on the basis that both the original plaintiffs and the intervenors lack standing.

The Court will first address the threshold issue of standing, both of the plaintiffs and the proposed intervenors, and will then consider the other alleged grounds for dismissal.

## I. *Standing*

■ The doctrine of standing to sue arises out of the requirement in Article III of the constitution for a "case or controversy" to underlie any assertion of federal court jurisdiction. Each plaintiff must allege a sufficient personal stake in the outcome of the controversy. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). "A federal court's jurisdiction ... can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). The injury must be such that it "fairly can be traced to the challenged action," *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), and the injury must be of the kind "likely to be redressed by a favorable decision." *Id.* See *Playboy Enterprises, Inc., v. Public Serv. Comm'n*, 698 F.Supp. 401, 414–15 (D.P.R.1988).

■ At least three additional requirements for standing, while not constitutionally based, have been imposed by the Supreme Court. First, "generalized grievances" shared by substantially the whole population do not normally warrant the exercise of jurisdiction. *Schlesinger v. Re-*

*servists to Stop the War*, 418 U.S. 208, 217–28, 94 S.Ct. 2925, 2930–35, 41 L.Ed.2d 706 (1974); *Flast v. Cohen*, 392 U.S. 83, 106, 88 S.Ct. 1942, 1955, 20 L.Ed.2d 947 (1968); *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205. Second, even when an injury sufficient to satisfy the constitutional requirement is alleged, the Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205. "Finally, the Court has required that the plaintiff's complaint fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge*, 454 U.S. at 475, 102 S.Ct. at 760, quoting *Association of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

As stated in *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206; "[o]ne further preliminary matter requires discussion. For purposes of ruling on a motion to dismiss for want of standing, [the Court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Moreover, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Id.* at 500, 95 S.Ct. at 2206.

With this framework in mind, we proceed to consider each plaintiff and proposed intervenor.

### A. *Municipality of Vieques*

■ The complaint in this case alleges that, between program years 1985–88, the Municipality of Vieques, under a New Progressive Party (NPP) administration, has received less money under the HCDA than other comparable municipalities administered by the Popular Democratic Party (PDP). This alleged economic loss clearly constitutes a "threatened or actual injury." "These palpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). Discrimina-

tion on the basis of the political affiliation of the municipal administration, within the "zone of interests" protected by the first amendment, is alleged as the cause of the injury, thus making it "fairly" traceable to the challenged action. This Court could enjoin future discrimination, should it be proper, which would provide plaintiff a remedy. Moreover, the municipality requests a money judgment against defendants in their personal capacities for the past harm caused by their alleged actions. For this, standing is clear. Therefore, the municipality (and Mayor Santiago in her official capacity, who represents it) has standing to litigate its claims.

### B. *Santiago in her personal capacity*

■ One oft-stated requirement of standing is that the plaintiff personally suffer the alleged harm or threatened harm. *See Warth*, 422 U.S. at 498–99, 95 S.Ct. at 2204–05. Santiago alleges in her complaint that she personally has been the target of defendants' political discrimination, satisfying the "own legal rights and interests" strand of the analysis, but nowhere does she allege that this discrimination has harmed her *personally*. She states that it has affected her ability to perform her duties as mayor, but this relates to her official capacity. She has not alleged that defendants' actions have affected her ability to retain the position of mayor, her salary in that position, or any other aspect of the job which can be considered personal. Nor does she allege that the housing and development aid would benefit her personally. All that she alleges personally is mental and moral sufferings which *she* values in the complaint at only $1.00. This *de minimis* claim of moral indignation is insufficient to confer standing. The complaint "fail[s] to identify any personal injury suffered by [the plaintiff] *as a consequence* of the alleged ... error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III ..." *Valley Forge*, 454 U.S. at 485, 102 S.Ct. at 765. *See Quiles v. Hernández Colón*, 682 F.Supp. 127, 129 (D.P.R.1988).

### C. *Martinez and Garcia*

■ Proposed intervenors Maritza Martinez Solis and Nilsa Garcia Franco are low-income residents of Vieques who contend that they:

> are in great need of housing and or economic development, and [have] been deprived of a reasonable and equitable amount of money from Title I HUD Federal Funds discriminatorily distributed by Defendants, because their Mayor is a member of the New Progressive Party.

Motion to Intervene at 1–2.

Martinez and Garcia have sufficiently alleged injury to themselves (the lack of adequate housing opportunities) resulting from defendants' actions of discriminatorily distributing federal housing funds. While it is not a certainty, these proposed intervenors' chances of obtaining housing assistance would increase if Vieques were provided increased funds. This sufficiently satisfies the "likely to be redressed by a favorable decision" prong of the constitutional standing test. *See Regents of the University of California v. Bakke*, 438 U.S. 265, 280 n. 14, 98 S.Ct. 2733, 2743 n. 14, 57 L.Ed.2d 750 (1978); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); *Bryant v. Yellen*, 447 U.S. 352, 366–68, 100 S.Ct. 2232, 2240–41, 65 L.Ed.2d 184 (1980).

Moreover, these individuals do not allege a "general grievance"—they allege that they, as low-income residents of Vieques in need of housing, have more to gain by this litigation than the average individual. And, clearly, providing housing for needy persons is within the zone of interests promoted by the HCDA. *See* 42 U.S.C. § 5301(c).

As to the requirement that plaintiffs must assert their own legal rights and interests, not those of a third party, *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205, the Court has held that this test is really the same as the test concerning the "zone of interests" the statute or constitutional guarantee is designed to protect. *Association of Data*

*Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153–54, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970). Moreover,

> The fact that the harm to petitioners may have resulted indirectly does not in itself preclude standing. When a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights.

*Warth*, 422 U.S. at 504–05, 95 S.Ct. at 2208.

Thus, it has been held that restricting doctors in a manner that prevents women from exercising their right to choose an abortion, *Roe v. Wade*, 410 U.S. 113, 124, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973), or restricting cable television operators so that a cable programmer's productions cannot be shown, *Playboy Enterprises, Inc., v. Public Serv. Comm'n*, 698 F.Supp. 401, 414–15 (D.P.R.1988), results in standing for the women or the programmers to be able to challenge the restrictions on the doctors or the cable operators. *See also Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (school can raise rights of parents to choose where children will be educated); *Truax v. Raich*, 239 U.S. 33, 38–39, 36 S.Ct. 7, 9, 60 L.Ed. 131 (1915) (alien employee can challenge statute threatening prosecution of employer for employing alien). Here, the defendants' alleged denial of equal funding for Vieques has caused harm to the proposed intervenors which will likely be remedied by a favorable decision. Because the constitutional standing requirements are thus met and because the purpose of the HCDA is clearly to provide increased housing opportunities to people like the proposed intervenors, the Court holds that they are sufficiently asserting their own rights and interests to be accorded standing.

### D. *Santiago as President of the NPP in Vieques*

The final issue of standing is whether the New Progressive Party of Vieques has standing to sue either for itself or on behalf of its members. The party does not allege that it has suffered or is threatened with suffering harm due to the challenged actions, despite the fact that the affiliation of the plaintiffs with it is the basis for the alleged discrimination. It does not allege any loss of members, money or votes. Therefore, as an entity in and of itself, the party lacks standing because it does not claim that it was or is injured. *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972).

An organization can, however, sue in certain cases to protect the rights of its members, with standing based on the injury to the members. The Supreme Court has stated:

> [W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

The NPP fails the first part of this test, although it may be simply due to a poorly drafted pleading. Nowhere in the motion to intervene is it even alleged who the members of the NPP in Vieques are, or that any of them suffer actual or threatened harm. While the organization has stated that "one of its priorities is the welfare of the residents of the Island Municipality of Vieques who are in great need of housing and or economic development," it has failed to allege that any of these residents for whose welfare the party is concerned are actually members of the party. Therefore, the Court holds that the NPP in Vieques and Ms. Santiago in her capacity as its president lack standing to intervene in this case, and the motion of the party to intervene is consequently DENIED.

## II. *Motion to Intervene*

Now that the Court has determined that proposed intervenors Martinez and Garcia have standing, the motion to intervene must be considered on its merits.

Although it does not so state, the Court deems the motion to intervene to have been filed under Fed.R.Civ.P. Rule 24(b), entitled "Permissive Intervention," rather than Rule 24(a), "Intervention of Right." No statute gives the proposed intervenors a right to intervene, Rule 24(a)(1), and there is no "property or transaction which is the subject of the action" for which the applicants are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest." Rule 24(a)(2). The applicants' claims do, however, have questions of law and fact in common with the main action so, pursuant to Rule 24(b)(2), they "may be permitted to intervene."

■ Rule 24(b) provides that "in exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The motion to intervene was timely filed—it was filed only two months after the complaint and at the same time as the response to defendants' motion to dismiss under Rule 12(b)(6). It adds no new material allegations or claims for relief to the complaint and will in no way delay or prejudice the adjudication of the rights of the original parties. Because the defendants' opposition to the motion to intervene rests upon two arguments—that the original plaintiffs lack standing and that the proposed intervenors lack standing—both of which have been rejected by the Court, the motion of Maritza Martinez Solis and Nilsa Garcia Franco to intervene in this action is GRANTED. From hereafter, Martinez and Garcia will be treated as co-plaintiffs with the Municipality.

## III. *42 U.S.C. § 1981*

■ One of the statutes under which plaintiffs brought this action is 42 U.S.C. § 1981. Section 1981 only prohibits discrimination on the basis of race, although that term is construed broadly. *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 609, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987). Plaintiffs here, however, nowhere allege any sort of racial discrimination. Moreover, § 1981 applies only to the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." The Supreme Court has recently held that "where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief." *Patterson v. McLean Credit Union,* —— U.S. ——, ——, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132, 150 (1989). It is clear from the complaint that none of the enumerated rights are involved. Therefore, plaintiffs have no cause of action under 42 U.S.C. § 1981, and the claim thereunder must be DISMISSED.

## IV. *Pendent Jurisdiction over State Law Claims*

In paragraph 20 of the complaint it is alleged that:

> Plaintiff has a state pendent jurisdiction cause of action for the violation of Puerto Rico's Constitution, Laws and Regulations, which prohibits discrimination against any person, natural or corporative.

This is the only state-law allegation in the complaint. It is nowhere alleged that this Court has anything other than pendent jurisdiction over the state law claims.

■ While, in cases such as this, federal courts can consider claims under state law, *see Pennhurst State School and Hosp. v. Halderman,* 451 U.S. 1, 31 n. 24, 101 S.Ct. 1531, 1547 n. 24, 67 L.Ed.2d 694 (1981), jurisdiction over those claims is a matter of "discretion, not of plaintiff's right." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720, 729 (1988). The basic test is whether the claims "derive from a common nucleus of operative fact." *Id.*

■ However, for any claim to be brought before the Court, it must meet the pleading requirements of Fed.R.Civ.P. Rule 8(a). Because there is no "showing that the pleader is entitled to relief" under state law—the provisions of law are not even enumerated, nor are there any facts showing the applicability of state law—the claim fails to meet even the minimum pleading requirements. There is no way for the Court even to determine whether the claims derive from a common nucleus of operative fact. Thus, given the Court's discretion to dismiss state law claims in the interest of "economy, convenience, fairness, and comity," *Cohill, id.*, 484 U.S. at 351, 108 S.Ct. at 619, 98 L.Ed.2d at 729, the state law claims are DISMISSED.

## V. *Cause of Action Under 42 U.S.C. § 1983*

Defendants claim that the plaintiffs have no cause of action under 42 U.S.C. § 1983 because the HCDA grants no private cause of action and because the Municipality is not a "person" entitled to relief under § 1983. They further contend that the principle that a municipality cannot sue its state bars this action by the municipality.

### A. *Private Right of Action under the HCDA*

The HCDA does not itself provide a right of action for those who allege a violation of its terms, so if any right exists it arises under § 1983. That statute provides for a cause of action when any federal right is violated under color of state law.

While violations of constitutional rights are actionable under § 1983, statutory violations are not always so. If the statute at issue does not expressly provide for a right of action, or expressly deny one, the Court must analyze the statute in light of four factors set out in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975).

Defendants contend that this action is barred under *Latinos Unidos De Chelsea En Accion v. Secretary of Hous. and Urban Dev.*, 799 F.2d 774, 793–95 (1st Cir. 1986), which held that, under *Cort*, Title I of the HCDA does not grant a right of action under § 1983. In *Latinos Unidos*, the plaintiffs challenged alleged discrimination against Hispanics in the administration of the HCDA. Such discrimination is specifically prohibited by Section 109(a) of the HCDA, 42 U.S.C. § 5309(a), and the Attorney General is authorized to bring a civil action to prevent or remedy it. *Id.* § 5309(c).

Here, while the program allegedly being administered improperly is the same as in *Latinos Unidos*, the basis for the challenge is different. The plaintiffs here claim political discrimination, which the statute does not mention and for which no statutory remedy exists. They allege, in fact, no violation of the HCDA, but rather only violations of the constitution in administering the HCDA. Therefore, the issue of whether the HCDA grants a private right of action for its violation is not before the Court, as no violation of that Act is alleged. The plaintiffs' action arises under the constitution, the violation of which is actionable under § 1983.

### B. *Municipality as a "Person" entitled to sue under § 1983*

Defendant contends that the Municipality of Vieques has no cause of action under 42 U.S.C. § 1983 because it is not a "citizen of the United States or other person within the jurisdiction thereof" within the meaning of that section.

In 1961, the Supreme Court held that municipalities are not "persons" liable under § 1983. *Monroe v. Pape*, 365 U.S. 167, 187–91, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492 (1961). *Monroe* by its terms did not refer to municipalities as plaintiffs, or "citizen[s] of the United States or other person[s] within the jurisdiction thereof," but in *City of Safety Harbor v. Birchfield*, 529 F.2d 1251 (5th Cir.1976), the Fifth Circuit held that the holding in *Monroe* was properly extended to cover municipal plaintiffs. *Id.* at 1253.

■ Subsequently, the Supreme Court overruled *Monroe* and held that municipalities *are* "persons" which can be held liable under § 1983. *Monell v. Department of*

*Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). After *Monell,* it is obvious that *Safety Harbor* is no longer correct. As the Sixth Circuit stated, "in light of *Monell,* it would be a strained analysis to hold, as a matter of statutory construction, that a municipal corporation was a 'person' within one clause of section 1983, but not a 'person' within another clause of the same statute." *South Macomb Disposal Authority v. Township of Washington,* 790 F.2d 500, 503 (6th Cir.1986). In enacting § 1983, Congress surely could not have intended the word "person" to have two different meanings—if it wanted to include municipalities as defendants but not as plaintiffs, it would have used different language to describe the potential parties in each group. Since it did not do so, this Court holds that the Municipality of Vieques is an "other person" within § 1983, entitled to bring suit under that statute.

### C. *Municipality's Right to Sue the State*

██ The resolution of the issue of whether the municipality is a "person" does not fully resolve the issue, as defendants cite several cases to the effect that, in general, municipalities cannot sue their states. *South Macomb,* 790 F.2d at 505; *Kelley v. Metropolitan County Bd. of Educ.,* 836 F.2d 986, 998 (6th Cir.1987). While this is, in effect, often the case, it is neither an exception to § 1983, to standing doctrines, nor a general principle in itself, but rather it is the effect of provisions of substantive law. For a party to be able to recover under § 1983, it must suffer "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." If the municipality does not have such a protected right, it cannot recover. *South Macomb,* 790 F.2d at 506. A state is not bound by substantive fourteenth amendment limitations (due process and equal protection) when dealing with its municipalities, *City of Trenton v. New Jersey,* 262 U.S. 182, 188, 43 S.Ct. 534, 537, 67 L.Ed. 937 (1923); *Appling County v. Municipal Electric Authority,* 621 F.2d 1301, 1307 (5th Cir.1980), nor does a municipality

have "privileges and immunities under the federal constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933). These cases "are substantive holdings that the Constitution does not interfere in states' internal political organization." *Rogers v. Brockette,* 588 F.2d 1057, 1069 (5th Cir.1979). *See also San Diego Unified Port Dist. v. Gianturco,* 651 F.2d 1306, 1309–10 n. 7 (9th Cir.1981) ("While there are broad dicta that a political subdivision may never sue its maker on constitutional grounds, ... we doubt that the rule is so broad.").

██ The cases thus hold that political subdivisions can sue their states on constitutional grounds when the right asserted *is* protected. *See Rogers,* 588 F.2d 1057 (supremacy clause); *San Diego Unified Port Dist. v. Gianturco,* 457 F.Supp. 283 (S.D. Cal.1978), *aff'd,* 651 F.2d 1306 (9th Cir. 1981) (same); *Board of Educ. v. Allen,* 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968) (first amendment) cited in *City of South Lake Tahoe v. California Tahoe Regional Planning Agency,* 449 U.S. 1039, 1041, 101 S.Ct. 619, 620, 66 L.Ed.2d 502 (1980) (White, J., dissenting from denial of certiorari). Because the first amendment, the basis for this political discrimination suit, does not limit its protection to any class, the municipality has rights "secured by the Constitution and laws" and enforceable under § 1983.

### VI. *Claim against Secretary of Justice*

Finally, defendant Héctor Rivera Cruz, Puerto Rico's Secretary of Justice, contends that the complaint should be dismissed against him because it alleges no acts or omissions on his part or for which he is responsible. Plaintiff has not pointed out any such allegations, nor can the Court find any. Therefore, the Court GRANTS the motion to dismiss the claim, if any,[1] against Héctor Rivera Cruz.

### VII. *Conclusion*

In sum, the Court holds that plaintiff Municipality of Vieques (and its mayor, Ma-

---

**1.** Rivera Cruz was not actually named as a de-

fendant, but rather as an "indispensable party."

nuela Santiago Collazo, in her official capacity) and plaintiff/intervenors Maritza Martinez Solis and Nilsa García Franco have standing to bring this action, while Mayor Santiago personally and the New Progressive Party do not. The complaint is thus DISMISSED as to plaintiff Santiago personally, and the NPP's motion to intervene is DENIED while that of Garcia and Martinez is GRANTED.

Further, the claims under 42 U.S.C. § 1981 and the pendent claims under Puerto Rico law are DISMISSED, and the complaint is DISMISSED as to "indispensable party" Héctor Rivera Cruz. The motion to dismiss the claims under 42 U.S.C. § 1983 is DENIED.

The Initial Scheduling Conference (ISC) which was previously vacated is RESET for September 15, 1989, at 3:00 p.m. The parties shall be fully prepared as ordered in the ISC Call of April 25, 1989.

IT IS SO ORDERED.

If he is indeed indispensable, either because he is personally liable to plaintiffs or because he must do or refrain from doing any act, he should have been named as a defendant. Because no acts or omissions of his have been alleged, the Court does not see how he is at all related to this case, much less indispensable.